IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

|  |  |  |
|---|---|---|
| **DOUG GRIZZLE,** | : | |
| Plaintiff, | : | Civil Action No. |
| | : | 5:08-CV-164 (CAR) |
| v. | : | |
| **MACON COUNTY, GEORGIA,** | : | |
| Defendant. | : | |

_____

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Currently before the Court is Defendant's Motion for Summary Judgment [Doc. 20]. Through the present motion, Defendant asserts that it is entitled to judgment as a matter of law because Plaintiff is not "disabled" within the meaning of the Americans with Disabilities Act (herein "ADA"), 42 U.S.C. § 12101 – 12213, et. seq. Upon consideration of the briefs and evidence submitted and for the reasons discussed below, the Court agrees. Defendant's Motion for Summary Judgment is accordingly **GRANTED**.

**I. STANDARD OF REVIEW FOR SUMMARY JUDGMENT**

Summary judgment must be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir.1996). However, not all factual disputes render summary judgment inappropriate; only a genuine issue of material fact will defeat a properly supported motion for summary judgment.

See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This means that summary judgment may be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict. See id. at 249-52.

In reviewing a motion for summary judgment, the district court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party, but the court may not make credibility determinations or weigh the evidence. See id. at 254-55; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law. Celotex, 477 U.S. at 323.

If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled to a judgment as a matter of law. See Fed.R.Civ.P. 56(e); see also Celotex, 477 U.S. at 324-26. This evidence must consist of more than mere conclusory allegations or legal conclusions. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir.1991). Summary judgment must be entered where "the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." Celotex, 477 U.S. at 323.

## FINDINGS OF FACT[1]

The present case arises from Defendant Macon County, Georgia's decision not to hire Doug Grizzle ("Plaintiff") as its County Building Inspector. The Building Inspector position was advertised as open in the fall of 2006 shortly after the then Building Inspector resigned. It was advertised in the local newspaper and was described as requiring the following minimum qualifications: a high school diploma, driver's license, and ability to obtain state certification for inspections conducted. The notice of employment also included a list of the duties required for the Building Inspector position: inspecting new residential construction within the County, including inspecting building foundations and structures for safety and compliance with standard codes; interpreting and explaining building and zoning ordinances, codes, and regulations to builders, contractors, and homeowners; answering zoning questions; and attending regular meetings with the County's Planning and Zoning Board.

Bill Sawyer, the County Manager and the person responsible for reviewing applications and interviewing position candidates, testified that the position required someone having zoning and administrative experience; contracting experience with residences, industrial buildings, or commercial buildings; and government experience. Candidates also needed strong interpersonal and communication skills, as the position involved a good deal of direct interaction with contractors, property owners, developers, and engineers, as well as the general public.

---

[1] The Court notes that, in his Response to Defendant's Statement of Material Facts [Doc. 42], Plaintiff failed to properly controvert evidentially supported facts alleged by Defendant by specific reference to the record. Instead, Plaintiff merely responded with the word "Denied." In such cases, the fact alleged is generally deemed admitted. See Local Rule 56.1, M.D. Ga. ("All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted . . . ."). See also Tapley v. Collins, 41 F. Supp. 2d 1366, 1368 n.1 (S.D. Ga. 1999), rev'd in part on other grounds, 211 F.3d 1210 (11th Cir. 2000) ("[A] non-moving party does not controvert an evidentially supported Fact Statement merely by stating, for example, that a factual assertion is "denied" or "controverted.") (citing Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742-43 (11th Cir.1996) and Cohen v. United American Bank of Cent. Fla., 83 F.3d 1347, 1349 (11th Cir.1996)); Union Planters Nat. Leasing, Inc. v. Woods, 687 F.2d 117, 119 (5th Cir.1982) ("Defense of a proper summary judgment motion requires more than a mere denial"). The Court will, nonetheless, attempt to view all facts in the light most favorable to the Plaintiff for the purpose of summary judgment. See Anderson, 477 U.S. at 254-55.

Plaintiff learned about the vacant Building Inspector position when he saw the job posting that was advertised in the newspaper. Five other individuals also applied for the Building Inspector position in response to the posting. Of these candidates, Mr. Sawyer selected Plaintiff and three others for a preliminary screening interview. Plaintiff was initially a candidate for the position because he had some past work experience in the construction industry and appeared to meet many of the primary qualifications for the job. At the time he applied for the position, however, Plaintiff was receiving Social Security disability benefits because of medical and mental impairments - including bipolar disorder. Mr. Sawyer was unaware that Plaintiff was receiving disability benefits when he invited Plaintiff for an interview, but he was aware that Plaintiff took medication for bipolar disorder.

Plaintiff has suffered with bipolar disorder for many years. For the most part, Plaintiff is "fine" with medication and does not have any problems on a day-to-day basis as a result of his bipolar disorder. Plaintiff does not regularly see a psychiatrist or psychologist for his bipolar disorder and has not done so in at least five years. Plaintiff further told his expert witness in this case, Dr. Richard Elliott, that he has not had a manic episode in connection with his bipolar disorder in at least ten years, and Dr. Elliott concluded that Plaintiff's bipolar disorder has had a very mild impact on his day-to-day life. Plaintiff agrees with that assessment.

Plaintiff admittedly has had no problems with his sleep because of the disorder. He generally goes to bed early every evening and sleeps approximately seven hours per night.

Plaintiff has also successfully demonstrated the capacity for employment in the past several years despite his diagnosis of bipolar disorder. He has held down quite a few jobs, including a job tracking inventory for a maintenance contractor, a job as a business development manager, a job as a project manager, a job as a truck driver, a job as a hardware store clerk, and a job as an advertising sales representative. Plaintiff's expert witness, Dr. Richard Elliott, likewise testified that Plaintiff had

demonstrated the capacity for employment in the past several years despite his diagnosis of bipolar disorder and concluded that Plaintiff's bipolar disorder would not impair his ability to perform the job of Building Inspector. Plaintiff has not had any significant communication or inter-personal problems when he was working in his prior jobs and has gotten along with coworkers and supervisors on most occasions. Plaintiff is also able to maintain somewhat normal relationships with his family and friends, testifying that he gets together with friends or family members once or twice a week and also keeps in touch by phone with his sister, who lives out of town. The only caveat to this being that Plaintiff is currently estranged from his son because of a personality conflict with his son's wife.

On the day of his interview for the Building Inspector position, Mr. Sawyer asked Plaintiff to come right on over to his office. Plaintiff wore a tee-shirt and jeans to the interview, and Mr. Sawyer felt as though Plaintiff failed to present himself professionally. Mr. Sawyer had further concerns about Plaintiff's interpersonal skills and interaction with the public. Plaintiff did not exchange any pleasantries at the interview; he did not smile or shake hands.

These interpersonal deficiencies can, in some cases, be attributable to a bipolar disorder. Plaintiff testified that his bipolar disorder may cause him to be abrasive and disruptive and that, at the time Plaintiff applied for the Building Inspector position, he was having "conflicts" with a number of people in the community. Plaintiff's own expert psychologist similarly testified that Plaintiff may not do well in a job where he had to constantly answer phones because his bi-polar disorder could cause him to be irritable or labile.

Still, during the interview for the Building Inspector position, Mr. Sawyer complimented Plaintiff on his work experience relative to other applicants, and the parties discussed the relevant salary and benefits of the job. Plaintiff, however, was not then offered the job or otherwise told that he would be awarded the position. Plaintiff did not have any experience as a Building Inspector, had

5

never worked for a city government, and had never had a job that involved community or public relations.

A few weeks later, Plaintiff contacted Mr. Sawyer to find out if any decision had been made regarding the position.[2] According to Plaintiff, Mr. Sawyer responded that he would not hire Plaintiff "if he were the last person on earth" because "you take medication for bipolar disease." Plaintiff was angered by this response, and, shortly thereafter, sent an email to two acquaintances who also knew Mr. Sawyer.[3] The email was copied to Mr. Sawyer and stated:

> I now see how that tying [sic] son of a bitch Bill Sawyer operates. He looks busy by doing all this advertising in the paper. Then he does nothing. I feel that he is feeling inferior because he is a simple wimp. I am not and will never be a wimp for that son of a bitch. He is a disgrace to Macon County. You may share this.

Plaintiff testified that he was angry when he sent this email, that he believed it was appropriate, and that he would do it again. Referring to his comments in his email about Mr. Sawyer, Plaintiff stated, "If the shoe fits, wear it." The email made Mr. Sawyer unhappy. He testified that, after receiving the email, he was "livid" and felt that the email was derogatory, offensive, and highly inappropriate.

Within a week, Mr. Sawyer hired John Turner for the Building Inspector position. Mr. Turner was not one of the six candidates initially considered, but he was then serving as the County's Emergency Management Agency Director and had also been serving as the Interim Building Inspector while the other applicants were being interviewed. Unlike Plaintiff, John Turner did not have prior construction experience. However, he did have experience with the County Commission and with other local, state, and federal agencies. Mr. Turner was also familiar with the zoning of the County, had the opportunity to train with the outgoing Building Inspector, and had been performing the job for more

---

[2] There is a material dispute between the parties as to when the phone call actually took place and who initiated it. However, for the purposes of this summary judgment, the Court will accept as true Plaintiff's version of events.

[3] There is also a dispute as to when the email was sent; but, again, for the purposes of summary judgment, Plaintiff's version of events is being accepted as true.

than three months by the time he was hired.

Upon learning that Mr. Turner was awarded the Building Inspector position, Plaintiff felt as though he was wrongly denied the position, that he was better qualified to serve as Building Inspector, and that Mr. Sawyer had in fact unlawfully discriminated against him in hiring because of his bipolar disorder. This suit followed.

## DISCUSSION

Through the present action, Plaintiff contends that he has been subjected to disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 – 12213, et. seq. To establish such a claim, Plaintiff must first demonstrate that he: (1) is disabled; (2) was a qualified individual who could perform the essential functions of the position, with or without reasonable accommodation; and (3) was discriminated against because of his disability. Terrell v. USAir, 132 F.3d 621, 624 (11th Cir.1998). On summary judgment, Defendant contends that Plaintiff is not "disabled" within the meaning of the ADA, that Plaintiff was not "qualified" for the position for which he applied, and that Plaintiff has failed to raise a material question as to whether he was discriminated against because of his disability. Because this Court agrees that Plaintiff is not "disabled" under the ADA (as enacted at the time of the refusal to hire him for the position), Defendant is entitled to summary judgment, and the remaining arguments need not be addressed herein.

Clearly, Title I of the Americans with Disabilities Act of 1990 prohibits a covered employer from discriminating against a qualified individual with a disability because of that person's "disability." See Cleveland v. Policy Mgt. Sys. Corp., 526 U.S. 795, 801, 119 S.Ct. 1597, 1601, 143 L.Ed.2d 966 (1999). A plaintiff alleging discrimination in violation of the ADA, however, bears the burden of establishing a prima facie case of disability discrimination, including first proving that he is "disabled."

"Bipolar disorder" has been held to constitute a mental impairment under the ADA. Price v. Facility Mgt. Group, Inc., 403 F.Supp.2d 1246, 1254 (N.D. Ga. 2005) (citing Pritchard v. Souhern Co. Servs., 92 F.3d 1130, 1132 (11th Cir.1996).  However, "[t]he mere presence of an impairment is not, by itself, sufficient to constitute a *disability* under the ADA." Williamson v. Int'l Paper Co., 85 F.Supp.2d 1184, 1188 (S.D. Ala. 2000) (citing Standard v. A.B.E.L. Servs, Inc., 161 F.3d 1318, 1327 (11th Cir.1998)) (emphasis added).

To maintain a claim under the ADA, a plaintiff must first demonstrate that he suffers from a "disability," defined as "a physical or mental impairment that substantially limits one or more of the major life activities . . . ." 42 U.S.C. §§ 12102(2)(A); Slomcenski v. Citibank, N.A., 432 F.3d 1271, 1280 (11th Cir. 2005); See also Curl v. United Supermarkets, Ltd., 179 Fed. Appx. 208, 209 (5th Cir. 2006). "The Equal Employment Opportunity Commission . . . has further defined 'major life activities' as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" Keeler v. Fla. Dept. Of Health, 2009 WL 1111551,*5 (11th Cir. April 27, 2009); 29 C.F.R. § 1630.2.  To establish that he is "substantially limited" in one of theses activities, the plaintiff must further show that he is either "(i) [u]nable to perform a major life activity that the average person in the general population can perform; or (ii) [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to ... the average person in the general population...." 29 C.F.R. §1630.2(i).

In the present case, Plaintiff contends that his bi-polar disorder qualifies him as "disabled" under the ADA because it causes him to be "substantially limited" in the major life activities of sleeping, working, and maintaining relationships with coworkers, family members, and friends.  The undisputed evidence  shows, however, that Plaintiff is "fine" with medication and does not have any problems on a day-to-day basis as a result of his bipolar disorder.  Plaintiff's own expert in this case testified that

Plaintiff's bipolar disorder has had a very mild impact on his day-to-day life, and Plaintiff agreed with that assessment. Plaintiff does not regularly see a psychiatrist or psychologist for his bipolar disorder and has not done so in at least five years. He testified that he has not had a manic episode in connection with his bipolar disorder in at least ten years. All evidence thus suggests that Plaintiff operates normally while medicated and cannot thus be considered "disabled" under the ADA.

As to his specific complaint of sleep limitation, Plaintiff's own testimony weighs against him. Plaintiff admitted that he currently has no problems with his sleep. He testified that he routinely goes to bed early in the evening and sleeps approximately seven hours per night. Based upon this undisputed evidence, Plaintiff cannot be said to have a substantial limitation in the major life activity of sleeping.

The same is true of Plaintiff's evidence regarding a substantial limitation in the major life activity of "working." Plaintiff has successfully demonstrated the capacity for employment in the past despite his diagnosis of bipolar disorder and has failed to point to sufficient evidence demonstrating that he is significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. See 29 C.F.R. § 1630.2(j)(3)(i). Clearly, the inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. Id. See also Carruthers v. BSA Advertising, Inc., 357 F.3d 1213, 1216 (11th Cir. 2004). "To be substantially limited in the major life activity of working . . . one must be precluded from more than one type of job, a specialized job, or a particular job of choice. " Williamson, 85 F.Supp.2d at 1194 (citation omitted).

Here, there is evidence in the record that Plaintiff has worked in a number of different positions, despite his bipolar disorder and without significant limitation. Over the last eleven years, he has worked in a position tracking inventory for a maintenance contractor, as a business development manager, as a project manager, as a truck driver, as a hardware store clerk, and as an advertising sales representative.

9

There is no evidence that his bipolar disorder in anyway interfered with his ability to perform those jobs. Plaintiff, in fact, testified that he did not have any significant communication or inter-personal problems when he was working in the prior positions and that he got along with his coworkers and supervisors reasonably well on most occasions. Plaintiff's expert witness, Dr. Richard Elliott, further testified that Plaintiff had demonstrated the capacity for employment in the past several years despite his diagnosis of bipolar disorder. Dr. Elliott also specifically evaluated Plaintiff's ability to perform as the County Building Inspector and concluded that Plaintiff's bipolar disorder did not impair his ability to perform that job. Plaintiff, however, claims that his bi-polar disorder precludes him from performing jobs requiring heavy machinery or certain power tools. Even if true, such a limitation is not alone sufficient to establish a disability under the ADA; the inability to operate heavy machinery or power tools is not a major life activity. See Dorsey v. Atlanta-Community Food Bank, 2007 WL 788936, at *4 (N.D. Ga. Mar. 14, 2007) (J. Story). Plaintiff has thus failed to raise a genuine issue of material fact as to whether he is substantially limited in his ability to work. He is not completely disqualified from a class of jobs that utilize similar knowledge, and there is no evidence that he was impaired from holding any other job. See Witter v. Delta Airlines, Inc., 966 F. Supp. 1193, 1199 (N.D. Ga. 1997).

Plaintiff also claims that his bi-polar disorder causes him to be substantially limited in the major life activity of relating to or interacting with others. Some doubt exists as to whether this limitation qualifies as a "major life activity." Mickens v. Polk County School Bd., 430 F. Supp.2d 1265, 1276 (M.D. Fla.,2006). The United States Court of Appeals for the Eleventh Circuit has not yet recognized that "interacting with others" is a major life activity under the ADA, and other circuit courts have expressed some skepticism about the idea. Price, 403 F. Supp. 2d at 1254 (citing Rohan v. Networks Presentations LLC, 375 F.3d 266, 274 (4th Cir. 2004)); see also Soileau v. Guilford of Maine, Inc., 105 F.3d 12, 15 (1 st Cir.1997) (rejecting the "ability to get along well with others" as a "remarkably

elastic," "unworkable," and "problematic" example of a "major life activity" under the ADA).

On the other hand, as Plaintiff contends, this Court is not limited by this case law when determining what activities are "major life activities." Rather, major life activities are broadly defined as those that are of central importance to daily life and "that the average person in the general population can perform with little or no difficulty." District courts are further instructed to consider a number of factors when determining whether a major life activity is substantially impaired, including: the nature and severity of the impairments; the duration or expected duration of the impairment; and the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. See 29 C.F.R. § 1630.2(j)(2); Simpson v. Ala. Dept. of Human Resources, 311 Fed. Appx. 264, 267 (11th Cir. 2009).

This Court also notes that, although the Eleventh Circuit has not recognized the limitation, a number of other circuit courts have held that "interacting with others" is a major life activity and that plaintiffs may, in some cases, be substantially limited in this area so as to be qualified as "disabled" under the ADA. See e.g., McAlindin v. County of San Diego, 192 F.3d 1226, 1234 (9th Cir. 1999); Jacques v. DiMarzio, Inc., 386 F.3d 192, 200 (2d Cir. 2004); Emerson v. N. States Pwr Co., 256 F.3d 506, 511 (7th Cir. 2001). Even so, these holdings seem to be limited to only the most severe cases. The United States Court of Appeals for the Second Circuit explained that

> [A] plaintiff is "substantially limited" in "interacting with others" when the mental or physical impairment severely limits the fundamental ability to communicate with others. This standard is satisfied when the impairment severely limits the plaintiff's ability to connect with others, i.e., to initiate contact with other people and respond to them, or to go among other people-at the most basic level of these activities. The standard is not satisfied by a plaintiff whose basic ability to communicate with others is not substantially limited but whose communication is inappropriate, ineffective, or unsuccessful.

Jacques, 386 F.3d at 203.

Under this standard, even if the Court were to consider "interacting with others" to be a major life activity for the purpose of establishing that Plaintiff is "disabled" under the ADA, the facts here do not raise a genuine issue as to whether Plaintiff's limitation is sufficiently sever to qualify as a "substantial limitation." As discussed above, Plaintiff's own testimony demonstrates that he has had no prior significant communication or inter-personal problems in the work place and that he got along with his former coworkers and supervisors reasonably well on most occasions. Plaintiff is also able to maintain somewhat normal relationships with his family and friends, testifying that he gets together with friends or family members once or twice a week and also keeps in touch by phone with his sister, who lives out of town. The only caveat to these admissions is Plaintiff's current estrangement from his son because of a personality conflict with his son's wife. A dispute with the in-laws, however, certainly does not render one "substantially limited" in the life activity of "interacting with others." Plaintiff's own testimony thus weighs against him and fails to raise any genuine dispute on this issue.

Furthermore, the majority of Plaintiff's evidence on this issue rests, not on his own experiences, but on "textbook explications of the types of symptoms people with his impairment might experience, failing to show [Plaintiff's] own symptoms" – i.e., his own experience of substantial limitation. Curl, 179 Fed. Appx. at 209 (finding this type of evidence to be insufficient to establish a substantial limitation as required by the ADA). Here, Plaintiff contends that his bi-polar disorder may cause him to be abrasive and disruptive to co-workers, and his expert generally opines that Plaintiff would, theoretically, not do well in a job where he had to constantly answer phones because his bi-polar disorder could cause him to be irritable or labile. Such general assertions are not enough to succeed on summary judgment. See id. Moreover, the fact that Plaintiff is able to care for himself, has been capable of working in other positions, and has maintained normal relationships with co-workers, family, and friends in general belie his conclusory assertions that he is unable to maintain cordial relationships with

12

other people and that he has "conflicts" with a number of people in the community. See id.

Most importantly, as discussed above, the standard of proving a substantial limitation in the life activity of interacting with others "is not satisfied by a plaintiff whose . . . communication is [merely] inappropriate, ineffective, or unsuccessful." Jacques, 386 F.3d at 203. Plaintiff contends that his communication may be abrasive and that he had experienced "personality conflicts" with others. He does not contend that he is unable "to initiate contact with other people and respond to them, or to go among other people-at the most basic level of these activities." See id. Nor has Plaintiff identified any evidence demonstrating that this interaction with others is otherwise "characterized on a regular basis by severe problems, [such as] consistently high levels of hostility, social withdrawal, or failure to communicate when necessary." See id. (suggesting what type of showing is necessary to establish a substantial limitation in relating to others). Plaintiff has thus failed to prove that he is substantially limited in this area. See id.; see also Doebele v. Sprint/United Management Co., 342 F.3d 1117, 1131 (10th Cir. 2003) (plaintiff's bipolar disorder did not substantially limit ability to interact with others since mere trouble getting along with coworkers is insufficient to show substantial limitation, and plaintiff failed to show impairment caused her trouble getting along with people in general as characterized on regular basis by severe problems, such as consistently high levels of hostility, social withdrawal, or failure to communicate when necessary). Accordingly, the Court concludes that even if "interacting with others" is a major life activity contemplated under the ADA, Plaintiff has failed to raise a triable issue as to whether he is substantially limited in this area as well.

Finally, Plaintiff contends that this Court should not take into consideration that his limitations are controlled or mitigated with medication. He does not dispute that he is generally "fine" when medicated and that he does not have any problems on a day-to-day basis as a result of his bipolar disorder. Again, Plaintiff's own expert in this case testified that Plaintiff's bipolar disorder has had a

very mild impact on his day-to-day life, and Plaintiff agreed with that assessment. Still, Plaintiff urges this Court to consider his bipolar disorder unaltered by medication as required by the ADA Amendments Act of 2008, which provides that "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as ... medication[.]" Amendments Act of 2008, Pub.L. No. 110-325, § 3(4)(E)(i), 122 Stat. 3553 (2008); see also Verhoff v. Time Warner Cable, Inc., 299 Fed. Appx. 488, 493 n. 3 (6th Cir. 2008) (noting that the 2008 amendments rejected the case law instructing that the court consider all ameliorative medication and devices when it determines whether a plaintiff is disabled under the ADA).

However, as even Plaintiff concedes, the relevant ADA amendment is ***not*** retroactive and does not apply to this case. See E.E.O.C. v. Burlington Northern & Santa Fe Ry. Co., --- F.Supp.2d ----, 2009 WL 1538156 (W.D. Tenn., June 03, 2009) ("Although the ADA Amendments Act of 2008 prohibits considering any ameliorative effect . . . in determining actual disability, the Act did not become effective until January 1, 2009, and it does not apply retroactively to the conduct at issue in this case."); Moran v. Premier Educ. Group, LP, 599 F.Supp.2d 263, 271 (D. Conn. 2009) ("[E]very court that has addressed this issue, which includes a number of federal district courts and at least one federal appeals court, has concluded that the 2008 Amendments cannot be applied retroactively to conduct that preceded its effective date.).  Rather, the Eleventh Circuit Court of Appeals has expressly stated that it looks to the ADA and its interpreting case law, *as in effect at the time of the alleged discrimination*, when determining applicability to the statute.  See Fikes v. Wal-Mart, Inc., 2009 WL 961774 at *1, n.1 (11th Cir., Apr. 10, 2009). Here, the alleged discrimination was undisputedly prior to the passage of the 2008 Amendment.

Even if it was appropriate for this Court to evaluate Plaintiff's claim in light of the 2008 ADA

14

Amendment, Plaintiff has failed to identify any evidence about the extent of his specific limitations without medication. Plaintiff has not identified any record evidence that, without medication, his bipolar disorder substantially limits any of his major life activities. Plaintiff does not cite to any evidence of the nature and severity of his condition in an unmitigated state, i.e., when he does not take his medication. Thus, regardless of whether this Court should consider his condition with or without medication, Plaintiff must fail on summary judgment.

Accordingly, for all of the reasons discussed above, the Court finds that Plaintiff has failed to raise a genuine issue of material fact as to whether he is substantially limited in one or more major life activities and has thus failed to demonstrate that he is "disabled" as contemplated by the ADA. Summary Judgment is due to be **GRANTED** in favor of Defendant.

## CONCLUSION

Whereas, there exist no genuine issue of fact as to whether Plaintiff is in fact "disabled" as contemplated by the ADA, Defendant's Motion for Summary Judgment is hereby **GRANTED**. Defendants Motion to Strike the Deposition Testimony of Plaintiff's Expert [Doc. 38] is **DISMISSED** as moot.

**SO ORDERED** this 20th day of August, 2009.

S/ C. Ashley Royal
C. ASHLEY ROYAL
United States District Judge

jlr

15